IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Dora Kunz, | : | |
| | : | Case No. 1:06-CV-012 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANTS' |
| Franklin City School District Board of | : | MOTION FOR SUMMARY |
| Education, *et al.*, | : | JUDGMENT AND DENYING |
| | : | PLAINTIFF'S MOTION FOR |
| Defendants. | : | SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc. 8) and Defendants' Motion for Summary Judgment (doc. 14).  Plaintiff Dora Kunz filed this suit against Defendants Franklin City School District Board of Education ("the Board"), Steve Buerschen, the Superintendent of Franklin City Schools, and six Board members asserting a violation of her due process rights.  Buerschen and the Board members, collectively, are referred to herein as the Individual Defendants.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

I.      FACTUAL BACKGROUND

This statement of facts is derived from the parties' Proposed Undisputed Facts and Responses thereto unless otherwise indicated.  Kunz applied for a principalship position with the Franklin City Local School District ("Franklin Schools") for the 2005-2006 school year.  Kunz had been previously employed by and likely was still under contract with the Columbus City

School District when she applied for the position with the Franklin Schools.[1]  (Doc. 8 ex. H at 412.)

Kunz interviewed with Superintendent Buerschen, and other Franklin Schools administrators, teachers and parents.  Kunz told the Franklin interviewers that she was interested in coming to Franklin because she and her husband wanted to work in a smaller community and wanted to own horses.  Superintendent Buerschen recommended that Kunz be hired.  On June 24, 2005, Superintendent Buerschen offered Kunz a contract as an elementary principal beginning on August 1, 2005.  The employment contract ran for period of two years from August 1, 2005 until July 31, 2007.  Kunz accepted the offer, and the Board approved her hiring on June 27, 2005.

On July 12, 2005, a parent in the school district called Superintendent Buerschen and informed him about a Columbus Dispatch article which reported that Kunz was the subject of disciplinary proceedings in the Columbus school district for allegedly failing to report a suspected case of child abuse that occurred in a building where she was the principal.  (Doc. 8 ex. H at 182-84.)  Superintendent Buerschen then contacted Kunz for an explanation.  Superintendent Buerschen was satisfied initially with Kunz's explanation.  Subsequently, after he received more information and after the Middletown Journal ran articles concerning Kunz's situation in Columbus, Superintendent Buerschen scheduled Kunz to meet on July 25, 2005 with school staff, parents, and the Board in separate sessions to tell her side of the story and respond

---

[1] In her Response to Defendants' Proposed Undisputed Facts, Kunz denies she was still under contract with the Columbus City School District.  However, she fails to provide a factual basis for the denial.  Moreover, Kunz testified before the administrative referee that she was under contract with Columbus at that time.  Whether Kunz was or was not under contract with Columbus is not dispositive in any event.

to questions.  (Doc. 8 ex. H at 187-207.)

Superintendent Buerschen informed Kunz before her July 25 meeting with the Board that "things didn't look good" for her and that she would have to explain to the Board why she had not disclosed the Columbus disciplinary proceedings against her.  (Doc. 8 ex. H at 436-38.) Kunz understood she would have to explain to the Board the incident that happened at the Columbus school.  In fact, Kunz brought with her to the July 25 meetings copies of the Columbus incident report and a letter from her attorney dated July 21, 2005 in which the attorney stated that she had told Kunz not to disclose the Columbus disciplinary proceedings against her to anyone until she submitted her resignation from Columbus.  (Doc. 14 ex. 2.) Nonetheless, Kunz denies that she understood the July 25 meetings to regard her job security with the Franklin Schools.  (Id.)  She asserts that she understood the purpose of the July 25 meetings simply to be to quell any fears others had regarding her intentions to keep the children at her school safe.  (Id.)  Kunz met with the teachers, parents, and the Board separately on July 25.  Her discussion with the Board occurred during an executive session.   Kunz explained her Columbus situation to the Board and they asked her questions at the July 25 meeting.

Subsequently, Superintendent Buerschen informed Kunz in a letter dated July 27, 2005 that he "plan[ned] to recommend to the [Board] at a special meeting to be held on August 1, 2005 at 7:00 a.m." that the Board immediately suspend Kunz without pay and initiate termination proceedings pursuant to Ohio Revised Code § 3319.16.  (Doc. 8 ex. D.) Superintendent Buerschen also informed Kunz of the specific location for the Board meeting in the letter.  He stated that the reasons for her recommendation were as follows:

1.      Negligent and/or intentional misrepresentation and/or falsification related to the reasons for your departure from the Columbus City School District

which occurred during the interview and hiring process;

2.        Other good and just cause.

(Id.)  Kunz points out that the July 27 letter did not specify that Kunz had the right to meet with the Board prior to any action to be taken by the Board.  (Id.; Kunz Aff. ¶ 19.)

Kunz did not attend the Board meeting or request a right to be heard prior to the August 1 special meeting of the Board.  At the meeting, the Board voted to adopt a Resolution stating its "intention to consider termination of [Kunz's] administrative contract, pursuant to Ohio Revised Code § 3319.16" for the reasons which had been stated in the July 27 letter.  (Doc. 8 ex. E.)  The Board also voted to immediately suspend Kunz without pay.  Consequently, Kunz did not begin work for Franklin Schools on August 1.

Kunz then exercised her right under Ohio Rev. Code § 3391.16 to demand an administrative hearing before a referee.  (Doc. 8 ex. F.)  A two-day hearing was held on October 5 and 6, 2005.  Kunz was represented by counsel who called and cross-examined witnesses, introduced exhibits, and made arguments on Kunz's behalf.  (Doc. 8 ex. H.)  On November 16, 2005, the referee issued a written opinion finding in favor of Kunz.  (Doc. 1-3.)  As permitted by § 3319.16, the Board rejected the referee's conclusions and terminated Kunz on November 28, 2005.  (Doc. 14 ex. J.)  Kunz appealed the Board's termination decision to the Warren County, Ohio Court of Common Pleas.  On February 13, 2007, the Court of Common Pleas denied Kunz's administrative appeal and upheld the Board's decision to terminate Kunz.  Kunz v. Franklin City Sch. Dist. Bd. of Educ., No. 05 CV 65417, slip op. (C.P. Warren Cty., Ohio Feb. 13, 2007).

Prior to the resolution of the state suit, on January 11, 2006, Kunz filed this action against the Board and Individual Defendants asserting a claim for violation of her due process right to a

4

pre-deprivation hearing.  Defendants and Kunz have moved for summary judgment and the motions are ripe for disposition.

## II.     STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if no genuine issues as to material facts exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the moving party has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

III.     **ANALYSIS**

A.     **Due Process**

Kunz alleges in her sole cause of action that Defendants violated her due process rights to

a pre-deprivation hearing before they voted to start termination proceedings against her.  "Public

employees whose property rights in continued employment are created by state laws or contracts

may assert federal constitutional claims under the Due Process Clause of the Fourteenth

Amendment."  McDaniel v. Princeton City School Dist. Bd. of Educ., 72 F. Supp. 2d 874, 877

(S.D. Ohio 1999).  The parties do not dispute that Kunz, as an Ohio public school employee, had

a property right in her continued employment pursuant to state law.  See Cleveland Bd. of Educ.

v. Loudermill, 470 U.S. 532 (1985); Jaffe v. Cleveland Hts.-University Hts. City Bd. of Educ.,

No. 92-3209, 1993 WL 2817, *3 (6th Cir. Jan. 7, 1993).

Both parties analyze the issue of whether Kunz received adequate due process through

the lens of the Loudermill decision.  The Supreme Court determined in Loudermill that a public

employee had a due process right to a limited hearing before being terminated from her

employment:

> [T]he pretermination hearing, though necessary, need not be elaborate.  We have
> pointed out that [t]he formality and procedural requisites for the hearing can vary,
> depending upon the importance of the interests involved and the nature of the
> subsequent proceedings.  In general, something less than a full evidentiary
> hearing is sufficient prior to adverse administrative action.

470 U.S. at 545 (internal quotations and citations omitted).  In Loudermill, the employee, a

security guard employed by a public school district, was classified under Ohio law as a civil

employee who could only be fired for cause and who was entitled to an administrative review if

discharged.  Id. at 535 (citing Ohio Rev. Code §§ 124.11, 124.34).  The Supreme Court found

that the plaintiff employee had a due process right to notice of the charges against him and an opportunity to respond to the charges *before* he was terminated in addition to the right to the statutory administrative review *after* he was terminated.

The Loudermill pre-termination hearing requirements, in situations where full post-termination administrative review also is provided, are not onerous.  Importantly, the pretermination hearing "need not definitively resolve the propriety of the discharge." Loudermill, 470 U.S. at 545.  The pre-termination hearing only is required to afford notice and an opportunity to respond.  Id. at 546.  "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Loudermill, 470 U.S. at 546.  The notice must include "specific notice of the reasons for the possible discipline."  McDaniel, 72 F. Supp. 2d at 879.   Notice of the specific charges may be given prior to or during the pre-termination hearing.  DeMarco v. Cuyahoga County Dep't of Human Servs., 12 F. Supp. 2d 715, 719 (N.D. Ohio 1998) ("There is no constitutional right to predeprivation notice of the grounds used to support discipline" if the charges are made known during the hearing.)  The opportunity to respond "must be a meaningful opportunity to prevent the deprivation from occurring."  McDaniel, 72 F. Supp. 2d at 880 (quoting Buckner v. City of Highland Park, 901 F.2d 491, 495 (6th Cir. 1990)).  The district court in McDaniel found that the plaintiff employee was not given pre-termination due process because she was not given notice of, and therefore had no opportunity to respond to, all of the reasons listed for her subsequent discharge at her pre-termination hearing.  Id. at 881.

Franklin Schools followed the procedures of Ohio Rev. Code § 3319.16 in terminating Kunz, a set of procedures for which the plaintiff in Loudermill had not been eligible.  Section

7

3319.16 requires a school board to provide "a written notice . . . of its intention to consider the termination of [the teacher's] contract with full specification of the grounds for such consideration" to a teacher before the teacher may be terminated.  Ohio Rev. Code § 3391.16.  The school board is permitted by the statute to suspend the teacher without pay pending the final termination decision.  Id. ("The board may suspend a teacher pending final action to terminate his contract if, in its judgment, the character of the charges warrants such action.").  The teacher then may request a pre-termination hearing before the school board or a referee.  Id.  At the pre-termination hearing, the teacher has the right to "be represented by counsel, require witnesses to be under oath, cross-examine witnesses, take a record of the proceedings, and require the presence of witnesses in their behalf upon subpoena to be issued by the treasurer of the board.."  Id.  If the hearing is conducted by a referee, the referee must issue a written report and then the board may vote to accept or reject the referee's recommendation regarding the termination of the teacher's employment.  Id.  The teacher may appeal a decision by the board to terminate her contract to court of common pleas for the Ohio county in which the school is located.  Id.

In this case, the Franklin Board provided Kunz with the § 3319.16 statutory written notice in the August 1, 2005 letter by which Board immediately suspended Kunz without pay, announced its intention to terminate her, and stated its specific grounds for the disciplinary actions.  (Doc. 8 ex. E.)  Kunz then timely demanded a hearing before a referee pursuant to Ohio Rev. Code §§ 3319.16, 3319.161.  A two-day hearing was held on October 5 and 6, 2005 before the referee.  Both Kunz and the Board examined and cross-examined witnesses and presented evidence.  (Doc. 8 ex. H.)  Subsequently, the Board voted to reject the recommendation of the referee and terminate Kunz's employment contract.  These procedures were not only consistent

with Ohio Rev. Code § 3319.16, but they also more than satisfied the minimal <u>Loudermill</u>
requirements to have provided Kunz with "notice of the charges against [her], an explanation of
the Board's evidence, and an opportunity to present [her] side of the story" before the Board
formally terminated her employment.  <u>Loudermill</u>, 470 U.S. at 546.

　　　　In arguing that her due process rights were violated, Kunz contends that she was entitled
to a <u>Loudermill</u> pre-termination hearing prior to and separate from the § 3319.16 hearing held on
October 5 and 6.  She cites no authority for this proposition and the Board cites no authority in
opposition to her position.  The Court, however, has found instructive caselaw.  The Sixth
Circuit stated in dicta in a 1994 case that <u>Loudermill</u> requires a pre-disciplinary hearing for a
municipal employee before the employee can be suspended without pay.  <u>Graham v. Van Osdale</u>,
No. 92-2491, 1994 WL 228272, *1 (6th Cir. May 24, 1994); <u>see also</u> <u>Rose v. Buckeye Valley
Loc. Sch. Dist. Bd. of Educ.</u>, No. 88-CA27, 1989 WL 47896, *3 (Ohio App. May 1, 1989)
(holding that a school district must provide a teacher with a <u>Loudermill</u> pre-disciplinary hearing
prior to suspending the teacher without pay).  Subsequently, in 1997, the Supreme Court refused
to adopt an absolute rule that a <u>Loudermill</u>-type hearing must be provided before a public
employee is suspended without pay.  <u>Gilbert v. Homar</u>, 520 U.S. 924, 929-30 (1997).  Rather,
the Supreme Court stated that three distinct factors must be balanced to determine what
constitutes due process in cases where an employee is suspended without pay:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest.

<u>Id.</u> at 931-32 (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)).

　　　　In this case, the Court has balanced these factors and concludes that Kunz did receive

9

adequate due process before she was notified that the Board had suspended her without pay in the letter dated August 1, 2005. First, Kunz's private interest in maintaining her livelihood and receiving a paycheck was substantial. Kunz was not suspended for a definite, limited period of time. Her suspension was indefinite and intended to serve as a precursor to her termination. Thus, her interest is greater than that of the plaintiff in Gilbert who was suspended only temporarily. Gilbert, 520 U.S. at 932 (stating that the length and finality of deprivation must be considered when determining what process is due). Second, though the Board did have an interest in resolving the situation of Kunz's employment as principal because the school year was starting and a school levy was approaching, its interest is less substantial than Kunz's interest. The Board could have protected its interest by suspending Kunz with pay pending the outcome of the § 3319.16 hearing. See Loudermill, 470 U.S. at 544-45 (suggesting that an employer can suspend an employee with pay to avoid the pre-deprivation hearing requirement). Finally, however, Defendants provided Kunz some minimal procedural safeguards that provided her notice and an opportunity to be respond which adequately protected her against an erroneous deprivation of her rights.

Kunz was given notice and an opportunity to respond when she was permitted to speak to the Board at its July 25, 20005 meeting. Kunz contends that the July 25 meeting did not provide adequate due process because she was not explicitly told prior to the meeting that her job was at stake. Her contention that the notice was insufficient does not withstand scrutiny factually or legally. Kunz testified that prior to the July 25 meeting with the Board, Superintendent Buerschen had told her on July 19 that "things were kind of going badly" and that Franklin Schools did not want the situation with her to "jeopardize their levy." (Doc. 8 ex. H at 434,

438.)  She also was told prior to the July 25 meeting with the Board that the purpose for the meeting was to "help the board members understand exactly what happened in Columbus, exactly what the situation was with the child and the incident and what I did."  (Id. ex. H at 446.)  Kunz testified that she knew that she would be asked "why [she] didn't tell [Franklin Schools]" about the Columbus incident.  (Id. ex. H at 486-87.)  In anticipation of these questions and to support the answers she intended to give, Kunz brought to the meeting copies of the Columbus incident report and copies of the letter from her attorney which had instructed her not to speak about Columbus incident.  (Id.)  At the July 25 meeting, Kunz was given the opportunity to tell "the story, the litany of events that happened."  (Id. ex H at 447.)  She discussed with the Board that she could not be principal any longer if the Ohio Department of Education pulled her license as a result of the Columbus incident.  (Id.)

Kunz's testimony establishes that before or during the July 25 meeting with the Board she was given notice of the charges against her–failure to disclose the Columbus incident–and given an opportunity to respond by telling what happened in Columbus and defending her decision not to disclose the incident.  Kunz was given a chance to "present [her] side of the case" sufficient to provide a  "an initial check against [a] mistaken decision" being made by the Board.  Loudermill,  470 U.S. at 543, 545.  Additionally, the Court finds that Kunz understood or should have understood that her job was in jeopardy before or during the July 25 meeting.  Defendants were not required in these circumstances to have explicitly stated before the July 25 meeting that Kunz's job was in jeopardy.  "When an employee is faced with charges that a reasonable person would recognize as jeopardizing an employment future [and given a chance to offer an explanation for the incident giving rise to the charges], extra pretermination due process

11

obligations are not placed on the employer." Buckner v. City of Highland Park, 901 F.2d 491, 495-96 (6th Cir. 1990) (rejecting the argument that due process notice was insufficient because the employee was not told he might be fired if he offered no exculpatory evidence to the employer); Green v. Village of Buckeye Lake, No. 01CA106, 2002 WL 1270892, *4 (Ohio App. May 15, 2002) (finding that due process does not require an employer to tell the employee he might be fired if he does not offer contrary evidence). Additionally, Kunz had substantial post-deprivation protection in the form of (1) the full administrative hearing before the referee in October 2005 during which Kunz was permitted to present witnesses and evidence and (2) the right to judicial review of the Board's ultimate termination decision. The Court holds that Kunz received sufficient due process. Accordingly, Defendants are entitled to summary judgment as to the claim against them.

**B.     Individual Capacity/Official Capacity**

The Individual Defendants are entitled to summary judgment on an additional basis as well. Each Individual Defendant is identified in the caption and in paragraph 2 of the Complaint by their name and with a statement of their position with the Franklin City Schools or on the Board. Kunz does not explicitly specify in the Complaint whether the Individual Defendants are being sued in their official capacities, their personal capacities, or both. A suit against an individual in his or her official capacity generally is treated as a suit against the public entity of which the individual is an officer or agent. Kentucky v. Graham, 473 U.S. 159, 166 (1985). An award of damages against an individual in his official capacity must be satisfied by the government entity, while an award against an individual in his or her personal capacity must be satisfied by the individual's personal funds. Id.

12

The Sixth Circuit has instructed that if a plaintiff intends to sue a government official in his or her personal capacity, the plaintiff should so specify in the complaint to provide notice of the possibility of personal liability.  <u>Wells v. Brown</u>, 891 F.2d 591, 593-94 (6th Cir. 1989).  The Sixth Circuit further instructed after <u>Wells</u> that courts should consider a suit against an individual to be an official capacity suit unless the plaintiff indicates to the contrary in the complaint.  <u>Whittington v. Milby</u>, 928 F.2d 188, 193 (6th Cir. 1991).  The failure to identify in the complaint that a suit is intended as a personal capacity suit is not fatal to the claim against the individual, however, if the individual otherwise receives notice during the "course of proceedings" that he or she is being sued in their personal capacity.  <u>Moore v. City of Harriman</u>, 272 F.3d 769, 772 (6th Cir. 2001).  Accordingly, in the Sixth Circuit, "[w]hen a 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether <u>Wells</u>'s first concern about notice has been satisfied."  <u>Id.</u> at 773.  Under the course of the proceedings test, courts "consider the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability."  <u>Shepherd v. Wellman</u>, 313 F.3d 963, 968 (6th Cir. 2002).

The Individual Defendants here were not put on notice that during the course of these proceedings that they might be sued in their individual or personal capacities.  As stated above, the Complaint does not specify that Kunz intended to hold the Individual Defendants personally liable, but rather refers to them only in their capacity as officials with the Franklin City School District.  The Complaint refers only to actions the Individual Defendants took as members of the

13

Board or as officials for Franklin Schools.

In their Motion for Summary Judgment, Individual Defendants does not assert qualified immunity, but instead assert that they should be dismissed as defendants because the claims against them are official capacity claims equivalent to the claim against the Board of Education. Kunz could have taken the opportunity in her response to the Motion to clarify that she intended to assert personal capacity claims, see Moore at 774 (notice of personal capacity nature given first at summary judgment stage is sufficient), but she failed to do so. Instead, Kunz quotes the language from 42 U.S.C. § 1983 that "every person . . . who causes . . . the deprivation of rights . . . shall be liable to the party injured." (Doc. 15 at 3.) The issue Individual Defendants raise is not whether individuals can be liable under § 1983; the issue is whether Kunz intended to assert claims against the Individual Defendants in their official or personal capacities. Kunz has failed to provide Individual Defendants with notice that they might be held personally liable. The Court, therefore, presumes that Kunz intended to sue Individual Defendants in their official capacities only. Individual Defendants are entitled to summary judgment to the extent that they cannot be held personally liable as a matter of law.

**IV.    CONCLUSION**

For the reasons stated above, Defendants are entitled to summary judgment as to the due process claims stated against them.  Plaintiff's Motion for Summary Judgment (doc. 8) is **DENIED** and Defendants' Motion for Summary Judgment (doc. 14) is **GRANTED**.

IT IS SO ORDERED.


    s/Susan J. Dlott           
Susan J. Dlott
United States District Judge